IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02987-RBJ

RICHARD BLANCO and PATRICIA DUKE,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

## ORDER

The parties have filed cross-motions for summary judgment. For the reasons expressed in this order, both motions are denied.

## BACKGROUND

This case arises from a tax return filed by Richard Blanco and Patricia Duke, husband and wife, for the 2009 tax year. Plaintiffs later were notified by the IRS that they had underreported their income, and that additional tax was due. After further investigation, plaintiffs agreed and paid the additional tax, interest and penalties assessed. They did not, however, believe that the penalty should have been assessed. This lawsuit was filed to challenge the Commissioner's rejection of plaintiffs' claim for a refund of the penalty payment. ECF No. 1. The Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

## FACTS

Plaintiffs support their motion for summary judgment with, among other things, Mr. Blanco's affidavit. ECF No. 18-8. He relates that sometime before 2009 he informed his Certified Public Accountant, Mark Rohn, that he might receive a monetary settlement from an age discrimination case against his previous employer. Mr. Rohn told him that the settlement might be structured to minimize the amount that was taxable as income. After Mr. Blanco received a settlement, he told Mr. Rohn that his attorney told him that the settlement was not taxable.[1] Mr. Rohn responded that "they must have consider [sic] the monetary settlement [to be] for pain and suffering." *Id.* at ¶2. Therefore, "we did not include the settlement in income on my 2009 tax return." *Id.* at ¶3. Mr. Blanco states that he relied on the advice of his attorney and his CPA. *Id.*

Mr. Blanco continues that when he was audited he learned that awards for pain and suffering are only excluded from income if they were related to a physical injury. Therefore, he agreed to pay additional tax, interest and penalties as assessed by the IRS agent. However, the IRS agent told him that the penalty could be abated based upon reasonable reliance on his CPA's advice. An IRS document submitted in support of the plaintiff's motion confirms that the original IRS agent agreed to abate the penalty based on a letter she received from Mr. Rohn; the

---

[1] Plaintiffs' portion of the proposed (and entered) Scheduling Order states that the attorney who handled the suit against Morgan Stanley told Mr. Blanco that he would receive a Form 1099 for any portion of the award that was taxable. He did not receive a 1099, and he conferred again with his attorney. The attorney told him that if he did not receive the 1099, the award was not taxable. Plaintiffs indicated that Mr. Blanco disclosed these facts to his CPA who responded that because he did not receive a 1099, the IRS must have considered the entire award to be for pain and suffering, so the income need not be reported on his tax return. ECF No. 12 at 2-3.

2

agent interpreted the Rohn letter as indicating that Mr. Rohn had told Mr. Blanco that a "settlement" he had received was not taxable income. ECF No. 18-2 at 4, ECF No. 18-3 at 1.

Plaintiffs submitted an affidavit from Mr. Rohn that repeats, in virtually identical language, this portion of Mr. Blanco's account. ECF No. 18-9. It even relates that he too learned after Mr. Blanco was audited that monetary awards for pain and suffering are only excluded from income if related to a physical injury. *Id.* at ¶5.

Mr. Blanco's affidavit goes on to state that the IRS agent later told him that she was unable to get the refund processed properly. The IRS document indicates that the "field" was overruled by a "division," to the consternation of the original agent. ECF No. 18-3 at 1. Mr. Blanco then contacted a "Taxpayer Advocate Service," which looked into it but told him that he would receive a letter denying the refund and informing him of his right to go to court. *Id.* at ¶¶ 4-7. This suit followed.

In its cross-motion for summary judgment the government provides additional details gleaned from depositions and other materials. Mr. Blanco has a B.S. in Marketing and has received further training in finance, insurance and compliance issues. ECF No. 19-1 at 10 (depo. p. 10). He is, and apparently throughout much of his career has been, a financial advisor. *Id.* at 8-11 (depo. pp. 10-13). He has held management positions, including his two years as the branch manager of Morgan Stanley Denver office. *Id.* at 11-12(depo. pp. 13-14).

After he was terminated by Morgan Stanley, Mr. Blanco pursued a wrongful discharge claim that initially was based on age discrimination. *Id.* at 13 (depo. p. 20). However, the claim that was ultimately presented to the FINRA arbitration panel did not include any claim based on age discrimination. ECF Nos. 19-1 at 72-79. The written arbitration decision listed the claims as

breach of contract, unjust enrichment, fraudulent inducement to contract, negligence and misrepresentation in connection with employment.  ECF No. 19-2 at 7.  Mr. Blanco was awarded compensatory damages of $390,000 without discussion of the nature of the damages.  *Id.*

In January 2010 Morgan Stanley sent Mr. Blanco a Form 1099-MISC Tax Statement.  The Form 1099 classified the arbitration award as "other income" and stated, "Generally, report this amount on the 'Other income' line of Form 1040 and identify the payment."  ECF No. 19-2 at 19-20.  In his deposition Mr. Blanco denied that he had seen the document, noting that it was incorrectly addressed, but he also testified that he could not remember whether he ever received a Form 1099 from Morgan Stanley.  ECF No. 19-1 at 29 (depo. p. 48) and 21 (depo. p. 32).

Mr. Blanco was asked about the advice he had received from his CPA, Mr. Rohn.  He testified that the year before he received the arbitration award he alerted Mr. Rohn to the possibility that he might receive an award, and he was told that those awards are often not taxable "due to age discrimination, things like that."  *Id.* at 35 (depo. p. 35).  He talked with Mr. Rohn after receiving the award, but he did not provide any information about the arbitration.  *Id.* at 23 (depo. p. 34).  Mr. Rohn "said he presumed it was nontaxable due [sic] the fact of the way the lawsuit was – or the arbitration came about."  *Id.*  Mr. Blanco admitted that he thought that Mr. Rohn based that presumption on "age discrimination and personal – I don't know what you call that."  *Id.* at 25 (depo. p. 37).  He thought that was because of what he had told Mr. Rohn about his suit the previous year.  *Id.*

Mr. Rohn testified in his deposition that he did not get a copy of the "settlement agreement" (the arbitration award).  ECF No. 19-1 at 60 (depo. p. 28).  He assumed the suit was based on age discrimination based on what Mr. Blanco had told him.  *Id.* at 61 (depo. p. 29).

When asked what advice he gave Mr. Blanco about the taxability of the award, Mr. Rohn testified, "I talked with Rick about it, and I guess I was wrong on this. I thought maybe there could be some pain and suffering or something like that attached to the suit, that it might exempt him from income taxes." *Id.* at 62-63 (depo. pp. 30-31). Mr. Rohn's letter to the original IRS agent, to which she referred in explanation of her decision to abate the penalty, states that when Mr. Blanco's suit was initiated "there was some discussion that a portion of any settlement could be exempt from income taxes if it addressed pain and suffering resulting in personal injuries." ECF No. 18-5 at 1. The letter also states that the income "was the result of arbitration on an age discrimination suit brought against a former employer," and that "the final arbitration did not disclose any methods or calculations as to how the final monetary settlement of $390,000 was reached." *Id.*

The attorney who handled Mr. Blanco's claims against Morgan Stanley, Otto K. Hilbert, II, testified in his deposition that his practice does not include tax law. ECF No. 19-2 at 26 (depo. p. 5). He was asked whether he gave Mr. Blanco tax advice, and he responded, "I tell all my clients, call your accountant . . . I do not give tax advice." *Id.* at 27 (depo. p. 10). He was asked a second time whether he gave Mr. Blanco advice about whether or not he should report the arbitration award on his tax return, and his answer was, "I told him to call his accountant." *Id.* at 28 (depo. p. 11).

It is undisputed that plaintiffs' tax return did not disclose the arbitration award. It reflected taxes due of $26,602. However, the amount actually due was $114,568. Therefore, plaintiffs' underreporting resulted in their underpaying taxes by $87,966. An accuracy-related penalty of 20% of the underpayment was assessed pursuant to 26 U.S.C. § 6662(a).

The government also provides evidence that Mr. Blanco made two additional deposits into his bank account in 2009 that totaled $110,000. ECF No. 19-7. The two payments came from Mr. Blanco's then employer, Bank of the West. ECF No. 19-1 at 34-36 (depo. pp. 59-60, 64). Mr. Blanco testified that he does not know what they were for or whether they were included in income on his 2009 tax return. *Id.* Neither payment appears to have been reported on his original or his amended 2009 tax return. *See* ECF Nos. 19-3 and 11. In response to the government's motion plaintiffs assert that these payments were non-taxable returns of principle from stock accounts. ECF No. 21 at 5. As the government notes in its reply, however, no evidence was submitted in support of that assertion.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Court will draw reasonable inferences and resolve fact disputes in favor of the party opposing summary judgment. *Yousuf v. Cohlmia,* 741 F.3d 31, 37 (10th Cir. 2014). In the present case both parties seek summary judgment. However, "the fact that both parties have moved for summary judgment does not permit the entry of a summary judgment if disputes remain as to material facts." *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690, 692 (10th Cir. 1981).

## CONCLUSIONS

### A. <u>Accuracy-Related Penalty on Underpayment: § 6662</u>.

Under the Internal Revenue Code, specifically 26 U.S.C. § 6662(a), a 20 percent penalty is applied to any portion of an underpayment to which the section applies. Section 6662(b) lists eight types of underpayments to which the section applies. The government contends that two of the eight categories apply here:

- An underpayment attributable to "negligence or disregard of rules or regulations." 26 U.S.S. §§ 6662(b)(1). "[T]he term 'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard." 26 U.S.C. § 6662(c).
- "Any substantial understatement of income tax." 26 U.S.S. §§ 6662(b)(2). This occurs if the amount of the understatement exceeds the greater of (i) 10 percent of the tax required to be shown on the return for the taxable year, or (ii) $5,000. 226 U.S.S. § 6662(d)(1)(A).

I need not reach or decide whether Mr. Blanco's underpayment was attributable to "negligence" or "disregard," which in any event would involve disputed facts, because it is beyond dispute that plaintiffs' income tax was substantially understated within the meaning of the Code. The tax owed (not considering the alleged additional $110,000 not declared) was $114,568. The amount paid was $26,602. The underpayment therefore was $87,966. Ten percent of the tax owed is $11,457. Obviously, the underpayment greatly exceeded that number. Therefore, plaintiff's understatement of the tax they owed was "substantial" as that term is defined in section §6662(d)(1)(A).

7

> But that is not the end of the § 6662 analysis because:
>
> The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to – (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item if – (I) the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and (II) there is a reasonable basis for the tax treatment of such item by the taxpayer.

26 U.S.C. § 6662(d)(2)(B).

Unfortunately for the plaintiffs, I do not find that this relief valve operates in their favor here. Plaintiffs have provided no authority, substantial or otherwise, supportive of the treatment that was given to the $390,000 payment. Even resolving factual disputes and construing inferences in plaintiffs' favor, it was undeniably wrong to exclude the payment from income. Gross income does not include damages "on account of personal physical injuries or physical illness." 26 U.S.C. § 104(a)(2). However, there is no evidence that the arbitration award compensated Mr. Blanco, in whole or in part, for physical injury or physical illness. Nor were the relevant facts affecting the award's tax treatment adequately disclosed in the return. The arbitration award was not disclosed at all.

The Court concludes, therefore, as a matter of law, that the accuracy-related penalty arising from a substantial understatement of income tax as described in § 6662(b)(2) was properly assessed, unless the reasonable cause exception in § 6664(c) applies.

### B. Reasonable Cause Exception for Underpayments: § 6664.

Section 6664(c)(1) of the Code provides, "[n]o penalty shall be imposed under section 6662 . . . with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." In *Blum v. Commissioner of Internal Revenue,* 737 F.3d 1303 (10th Cir. 2013), the

court, applying § 6664(c)(1), held that the "accuracy-based penalty for negligence is not available if the taxpayer reasonably and in good faith relied upon professional tax advice." *Id.* at 1317. Although the court there dealt with an understatement penalty resulting from negligence pursuant to § 6662(b)(1), an issue that I did not resolve for purposes of the pending motions, the analysis logically applies as well to a penalty for substantial understatement of income tax under § 6662(b)(2).

Nevertheless, as the government notes in its motion for summary judgment, *Blum* characterized this as a "narrow defense." *Id.* The court explained,

> In determining whether reasonable cause and good faith exist, the most important factor is 'the extent of the taxpayer's effort to assess the taxpayer's proper tax liability' judged in light of his experience, knowledge, and education. 26 C.F.R. § 6664-4(b). A common issue within the reasonable cause analysis is the taxpayer's reliance on the advice of a professional tax advisor. Such reliance, however, 'does not necessarily demonstrate reasonable cause.' 26 C.F.R. § 1.6664-4(b).
>
> Professional advice providing the basis of a reasonable cause defense typically exhibits certain characteristics, of which three are particularly applicable in this case. First, the advice must be independent. Second, the advice must be based on all relevant facts and no inaccurate factual representations. And third, reasonable cause requires that the taxpayer actually receive the advice and rely upon it before claiming the tax benefit.

*Id.* at 1317-18.

The government has produced evidence that it contends establishes that Mr. Blanco did not reasonably and in good faith rely on the advice he claims to have been provided by his attorney and his CPA. The government began with Mr. Blanco's education, experience and knowledge in area of financial matters. The government then produced evidence that seems to contradict Mr. Blanco's representation that he was told by his attorney that the award was not taxable. The government's evidence also indicated that Mr. Blanco failed to clarify for his CPA

9

the nature of his claim once he got to arbitration, and that he did not provide the CPA with a copy of the written arbitration award. The CPA's letter to the IRS agent is not clear about the specific representations of Mr. Blanco or the specific advice he gave to Mr. Blanco. The government's evidence tending to indicate that Mr. Rohn did not question Mr. Blanco's representations gives me pause about the CPA's "independence," as does the fact that Mr. Rohn signed an affidavit that in substantial part is a near copy Mr. Blanco's affidavit. The mystery concerning the two payments Mr. Blanco received from his employer Bank of the West in 2009 but were not declared on his tax return also remains unresolved at this point.

That said, Mr. Blanco has come forward with at least some evidence that, if construed in his favor for purposes of a summary judgment motion, supports his position. He has claimed in his affidavit, under oath, that he was told by his attorney that the award was not taxable. The attorney's response to questions about any tax-related advice he might have given Mr. Blanco fell short of an unequivocal denial. Despite the vagueness of the CPA's letter to the original IRS agent, it is possible that the CPA (despite the quality and quantity of information Mr. Blanco provided) told Mr. Blanco unequivocally that the arbitration award was not taxable. Construing all evidence and inferences in Mr. Blanco's favor, I am willing at this point to infer that Mr. Rohn was competent to provide tax advice, and that he maintained his independence.

The Court finds there are genuine issues of material fact concerning what professional advice Mr. Blanco received and whether he relied on the advice of his professional advisors reasonably and in good faith. A significant factor in the Court's resolution of these issues will be the Court's assessment of the credibility of witnesses, particularly Mr. Blanco, Mr. Hilbert and Mr. Rohn. Such an assessment is difficult to make from affidavits drafted by lawyers. For those

reasons, the Court concludes that the § 6664(c)(1) issue is not appropriate for summary disposition.

## ORDER

Plaintiffs' motion for summary judgment, ECF No. 18, is denied.  Defendant's motion for summary judgment, ECF No. 19, is denied.  Plaintiffs' unopposed motion to file their response out of time based on counsel's calendaring error, ECF No. 22, is granted.

DATED this 6th day of January, 2016.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge