IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02987-RBJ

RICHARD BLANCO and PATRICIA DUKE,

     Plaintiffs,

v.

UNITED STATES OF AMERICA,

     Defendant.

---

## FINDINGS, CONCLUSIONS AND ORDER OF JUDGMENT

---

This case was tried to the Court on January 11 and 12, 2016. The Court here sets forth its findings of fact and conclusions of law. For the reasons expressed in this order, the Court directs that final judgment enter in favor of the defendant.

## BACKGROUND

This case arises from a tax return filed by Richard Blanco and Patricia Duke, husband and wife, for the 2009 tax year. After being informed by the Internal Revenue Service that they had underreported their income, plaintiffs agreed and paid the additional tax, interest and penalty assessed. However, they did not believe that the penalty was appropriate and filed this lawsuit to challenge the Commissioner's rejection of plaintiffs' claim for a refund of the penalty payment. ECF No. 1. The Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

## FINDINGS OF FACT

In 2004 Richard E. Blanco, a financial advisor at UBS Financial Services, was recruited by Morgan Stanley to be the branch manager of its Denver, Colorado office.  In 2006 his employment was terminated.  He hired a lawyer, Otto K. Hilbert II, to represent him in a wrongful discharge claim which ultimately was pursued in an arbitration proceeding conducted by the Financial Industry Regulatory Authority, Inc. (FINRA).  Mr. Blanco through counsel filed his initial Statement of Claim with FINRA on September 14, 2007.  Ex. 13 at Bates MS000057.  The arbitration was ultimately concluded with an award to Mr. Blanco of $390,000 in "compensatory damages" plus $600 in costs on March 31, 2009.  *Id.* at Bates MS000058.

On one or more occasions while the arbitration was pending Mr. Blanco had informed his Certified Public Accountant, Mark Rohn, that he was pursuing an age discrimination claim, and that he and his attorney were not sure whether an award would be taxable.  Mr. Rohn confirmed that he had a vague recollection of discussing this with Mr. Blanco.  Mr. Rohn thinks that he might have indicated that, depending upon "how the settlement was based," i.e., whether part of it would be for pain and suffering, part of the settlement or award might not be taxable.[1]  He recalls that he had one telephone conversation with Mr. Hilbert back then too, probably about how a settlement could be structured for tax purposes.

In fact, the claim resolved by FINRA was not an age discrimination claim.  To be clear, Mr. Hilbert had suggested in an Amended Statement of Claim filed with FINRA on November 2, 2007 that discrimination because of Mr. Blanco's age and race were additional reasons for the

---

[1] In his trial testimony Mr. Rohn indicated that his impression in 2009 was that there usually must be some physical injury for the pain and suffering to be non-taxable, although he believes there are some exceptions.  There is no evidence that he discussed the physical injury aspect with Mr. Blanco.

unlawful termination of Mr. Blanco's employment.  Ex. 11 at 3.  Nevertheless, he stated that Mr.

Blanco would pursue his claim "under theories of breach of contract, unjust enrichment,

fraudulent inducement to contract, negligence and misrepresentation."  *Id.*  This list of claims

was repeated in a Second Amended Statement of Claim filed on March 4, 2008.  Ex. 12 at 3.

Likewise, the arbitration award described the causes of action as "breach of contract, unjust

enrichment, fraudulent inducement to contract, negligence and misrepresentation in connection

with his employment."  Ex. 13 at Bates MS000058.

Morgan Stanley paid the award with two checks, one for $390,000 and the other for

$600, on April 16, 2009.  Ex. 14.  Mr. Blanco testified that he thought the award would be

taxable, and he expected to receive a Form 1099 from Morgan Stanley reporting on this

payment.  However, he did not receive a 1099, and in March 2010 he asked his attorney, Mr.

Hilbert, what he thought about that.  According to Mr. Blanco, Mr. Hilbert told him, "well, looks

like it isn't taxable, 'cause you can't pay tax on a 1099 that you haven't received." [2]  In his

deposition Mr. Blanco's testimony was even stronger: "At one point I told him that I hadn't

received a 1099.  He said it was nontaxable, from my recollection."  ECF No. 19-1 at 14 (depo.

p. 24).  He added that Mr. Hilbert did not give him any explanation for why he thought the award

was not taxable, nor did Mr. Blanco ask for an explanation.  *Id.* at 15 (depo. p. 25).

Mr. Hilbert did not fully confirm that testimony.  He denies that he ever expressed an

opinion to Mr. Blanco as to whether or not the arbitration award was a taxable event.  Rather, he

told Mr. Blanco that he shouldn't pay tax on the award until he received a 1099, and that he

should talk to his accountant about the taxability of the award.  Mr. Hilbert also testified that he

---

[2] I am quoting from trial notes.  A transcript of the trial has not been prepared.

has no special education in tax law; that no part of his practice deals with tax; and that the tax courses he took in law school became largely irrelevant when the Code was changed the year after he graduated.  He practices as a securities litigator.

Based on the conflicting testimony and my assessment of the credibility of the gentlemen, I find that Mr. Hilbert probably told Mr. Blanco something to the effect that he did not have to pay the tax until he received a 1099; that if Morgan Stanley did not issue a 1099, the award might not be taxable; and that he should consult with his accountant about it.  There is no credible evidence that Mr. Hilbert told Mr. Blanco that the award was not taxable or that it need not be reported.  The Court further finds that Mr. Hilbert was not competent by training or experience to give tax advice.  Mr. Blanco, who is highly educated and experienced as a financial advisor, knew that Mr. Hilbert was not a tax lawyer.  He picked Mr. Hilbert for his securities expertise, and he admitted that he does not know whether Mr. Hilbert is competent to give tax advice.

In fact, Morgan Stanley did issue a 1099 to Mr. Blanco on January 18, 2010, and there is at least some circumstantial evidence that he might have received it.  In his deposition Mr. Blanco testified that he did not remember whether he received a 1099.  ECF No. 19-1 at 21 (depo. p. 32).  At trial he testified that the deposition testimony was mistaken, and he is positive that he did not receive it.  In support he notes that the 1099 was sent to an incorrect address. However, Morgan Stanley's checks paying the arbitration award, which Mr. Blanco received, were sent to the same address.  Nevertheless, there is no direct evidence that he received the form, and I am willing to give him the benefit of the doubt and assume that he did not receive it.

Mr. Blanco admits, however, that he expected that he would receive a 1099 from Morgan Stanley and, after talking to Mr. Hilbert, he thought that whether he received a 1099 was "the critical fact in whether or not [he] needed to report the $390,000." But, despite that belief (or possibly because of it) he didn't contact Morgan Stanley and learn that it had issued a 1099. Mr. Blanco says that he called Morgan Stanley's toll-free number four or five times to attempt to inquire whether a Form 1099 had been sent, but only once did he speak to anyone. The person with whom he spoke "really didn't know very much about the whole situation," "didn't give me much information," and "barely spoke any English." He said that this individual said that "they" would get back to him, but they didn't, and at that point "I gave up." Nor did he ask Mr. Hilbert to contact Morgan Stanley's lawyers and ask about a 1099.

I also note that Mr. Blanco's testimony about the one person with whom he spoke was not consistent with his deposition testimony. There, when he was asked whether he had ever called anyone at Morgan Stanley to ask them whether they planned to issue a Form 1099, he testified (twice) that he never spoke to a human being, only a recorded line. ECF No. 19-1 at 21 (depo. page 32) and 29 (depo. p.48).

Mr. Blanco did talk to his CPA, Mr. Rohn, and he relayed what he says Mr. Hilbert told him. He says that Mr. Rohn told him that "a lot of these types of situations are nontaxable because they're pain and suffering." According to Mr. Rohn, Mr. Blanco told him that he had not received a 1099, and that his attorney told him that if he hadn't received a 1099, the award probably was not taxable. Mr. Rohn asked Mr. Blanco what the award was for. Mr. Blanco responded that the award was probably for pain and suffering, and that it wasn't taxable. Mr. Blanco did not give Mr. Rohn a copy of the written arbitration award. Mr. Rohn thinks that he

5

might have asked to see the document, but he didn't get it.  Asked why he did not follow up he said, "I don't know.  I guess I felt that the conversation that the client had with his attorney was probably sufficient."  Based on Mr. Blanco's statements Mr. Rohn did not include the award in the tax return.

Mr. Blanco says that he learned that the award should have been reported when he received a form from the IRS indicating that "I owed them a lot of money."  He says he tried to call the IRS several times but no one returned his calls.  He told Mr. Rohn about it, and says, "I think he wrote them a letter."  Mr. Blanco found out that the IRS was going to put a lien on his property, which he knew would not be good for his record as a stockbroker or financial advisor. He therefore "ran over" to the office of the IRS revenue agent, Linda McCord, confirmed that a lien was imminent, and promptly paid the tax, interest and penalty in order to avoid the lien.

Mr. Blanco's testimony that he thought Mr. Rohn wrote a letter to the IRS was an understatement.  Mr. Rohn actually sent a series of three letters to the IRS seeking a refund of the penalty.  Mr. Blanco was copied on each of these letters.  In the first letter, dated October 24, 2011, he stated that the $390,600 was awarded to Mr. Blanco as the result of an age discrimination suit; that Mr. Blanco believed that most of the money was awarded as personal injuries; and because the taxpayers had not received a 1099 and believed that the income was not taxable, they were requesting an abatement of the accuracy related penalty.  Ex. 24.  This was repeated, in substance, in letters dated May 24, 2012 and February 7, 2013.  Ex. 25 and 26.  He did not refer to the advice that Mr. Blanco claimed to have received from Mr. Hilbert.

The award, a copy of which was admitted as Ex. 13, was not for age discrimination, nor was any of it designated as being for pain and suffering or personal injuries.  When Mr. Rohn

was shown the arbitration award at trial, he acknowledged that if he had seen the award when he met with Mr. Blanco in 2010 to discuss his 2009 tax return, he would have told him to report it on his tax return.  When asked whether, in retrospect, he wishes he had seen it, his answer was, "I certainly do."

Mr. Rohn also acknowledged that had Mr. Blanco not said that his attorney told him the award probably was not taxable, he probably would have requested more information about it. The attorney's advice was important to him, and in retrospect he wishes he had had a conversation with Mr. Hilbert.  He acknowledged that if he had known that the attorney had told Mr. Blanco that he should call his accountant regarding the taxability of the award, Mr. Rohn would have done more investigation.  As for the 1099, typically he does not contact the employer directly, because the employers would not respond to him.  However, he tells his client (and thinks he probably told Mr. Blanco) to communicate with Morgan Stanley about it.  Mr. Rohn testified that, had he received the 1099 issued by Morgan Stanley, he would have told Mr. Blanco to report the award.  The Court asked Mr. Rohn, "Would it be fair to say in your opinion that you weren't given the information you needed to give advice?"  Mr. Rohn's answer was "Yes."

Plaintiffs' original 2009 tax return reflected taxes due of $26,602.  It is undisputed, however, that the arbitration award was taxable and should have been included in plaintiffs' income.  It is also undisputed that the tax actually owed on plaintiffs' income for 2009 was $114,568.  Therefore, plaintiffs' underreporting resulted in their underpaying taxes by $87,966. An accuracy-related penalty of 20% of the underpayment ($17,593) was assessed pursuant to 26 U.S.C. § 6662(a).

Ms. McCord, the original revenue agent, testified that Mr. Blanco told her that "his CPA advised him that it was not taxable income," and that he never received Morgan Stanley's 1099. *See also* Ex. 2 at Bates IRS000017 (her note stating that Mr. Blanco told her that he truly thought the award was not taxable).  She believes she had one conversation with Mr. Rohn during which she asked him to document his statements in a letter.  Mr. Rohn's February 7, 2013 letter, Ex. 26, was specifically addressed to her.  Based on the information she received from Mr. Blanco and Mr. Rohn, Ms. McCord recommended that the accuracy-related penalty be abated.  Her recommendation was approved by her immediate supervisor, but it was rejected at a higher level. The evidence was not clear as to how or why the final decision was made.[3]

Ms. McCord then referred Mr. Blanco to an individual in the Taxpayer Advocate Service, an independent organization within the IRS.  This individual, Jon K. Graham, apparently determined that the penalty would not be abated and advised Mr. Blanco of his appeal rights. *See* Ex. 5 at Bates TAS000022.  This lawsuit followed.

## CONCLUSIONS

### A.  Accuracy-Related Penalty on Underpayment: § 6662.[4]

Under the Internal Revenue Code, specifically 26 U.S.C. § 6662(a), a 20 percent penalty is applied to any portion of an underpayment to which the section applies.  Section 6662(b) lists

---

[3] One note in the IRS records, from a "collection analyst," seems to suggest that reasonable cause does not apply if a penalty assessed under § 6662 of the Code pertains to a transaction "lacking economic substance" or "failing to meet the requirements of any similar rule of law."  Ex. 4 at Bates TAS0005. That does not make sense on these facts.

[4] This part of the order is largely a duplicate of an order the Court earlier issued denying the parties' cross-motions for summary judgment.  ECF No. 27.  There was no dispute at trial about the application of § 6662.

eight types of underpayments to which the section applies.  The government contends that two of the eight categories apply here:

- An underpayment attributable to "negligence or disregard of rules or regulations."  26 U.S.S. §§ 6662(b)(1).  "[T]he term 'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard."  26 U.S.C. § 6662(c).

- "Any substantial understatement of income tax."  26 U.S.S. §§ 6662(b)(2).  This occurs if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $5,000.  226 U.S.S. § 6662(d)(1)(A).

I need not reach or decide whether Mr. Blanco's underpayment was attributable to "negligence" or "disregard" because it is beyond dispute that plaintiffs' income tax was substantially understated within the meaning of the Code.  The tax owed was $114,568.  The amount paid was $26,602.  The underpayment therefore was $87,966.  Ten percent of the tax owed is $11,457.  Obviously, the underpayment greatly exceeded that number.  Therefore, plaintiffs' understatement of the tax they owed was "substantial" as that term is defined in section §6662(d)(1)(A).

That is not the end of the § 6662 analysis because:

> The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to – (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item if – (I) the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and (II) there is a reasonable basis for the tax treatment of such item by the taxpayer.

26 U.S.C. § 6662(d)(2)(B).

Unfortunately for the plaintiffs, this relief valve does not help them.  Plaintiffs have provided no authority, substantial or otherwise, supportive of the treatment that was given to the $390,000 payment.  It was undeniably wrong to exclude the payment from income.  Gross income does not include damages "on account of personal physical injuries or physical illness." 26 U.S.C. § 104(a)(2).  However, the arbitration award did not compensate Mr. Blanco, in whole or in part, for physical injury or physical illness.  Nor were the relevant facts affecting the award's tax treatment adequately disclosed in the return.  The arbitration award was not disclosed at all.

The Court concludes, therefore, that the accuracy-related penalty arising from a substantial understatement of income tax as described in § 6662(b)(2) was properly assessed, unless the reasonable cause exception in § 6664(c) applies.

**B. Reasonable Cause Exception for Underpayments: § 6664.**

Section 6664(c)(1) of the Code provides that "[n]o penalty shall be imposed under section 6662 . . . with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."  In *Blum v. Commissioner of Internal Revenue,* 737 F.3d 1303 (10th Cir. 2013), the court, applying § 6664(c)(1), held that the "accuracy-based penalty for negligence is not available if the taxpayer reasonably and in good faith relied upon professional tax advice."  *Id.* at 1317.  Although the court there dealt with an understatement penalty resulting from negligence pursuant to § 6662(b)(1), an issue that I have not addressed, the analysis logically applies as well to a penalty for substantial understatement of income tax under § 6662(b)(2).

The *Blum* court characterized reliance on professional tax advice as a "narrow defense."

It explained,

> In determining whether reasonable cause and good faith exist, the most important factor is 'the extent of the taxpayer's effort to assess the taxpayer's proper tax liability' judged in light of his experience, knowledge, and education. 26 C.F.R. § 1.6664-4(b).   A common issue within the reasonable cause analysis is the taxpayer's reliance on the advice of a professional tax advisor.   Such reliance, however, 'does not necessarily demonstrate reasonable cause.'   26 C.F.R. § 1.6664-4(b).
>
> Professional advice providing the basis of a reasonable cause defense typically exhibits certain characteristics, of which three are particularly applicable in this case.   First, the advice must be independent.   Second, the advice must be based on all relevant facts and no inaccurate factual representations.   And third, reasonable cause requires that the taxpayer actually receive the advice and rely upon it before claiming the tax benefit.

*Id.* at 1317-18.

These same themes are found in Tax Court decisions.   In *Ziegeler v. Commissioner,* T.C. Summ. Op. 2010-65, 2010 WL 2105928 (2010), the taxpayers reported $15,000 in wages from the Health First Medical Group and $142,827 in income from consulting clients, but they did not report $86,577 of income from Health First Medical Management Co.   The taxpayers provided their CPA with information on the consulting income and a Wage and Tax Statement from Health First Medical Group.   However, they had not received a Schedule K-1 from Health First Medical Management, which would have disclosed the income from that source, and therefore they did not provide a Schedule K-1 to their CPA.

The Commissioner rejected a § 6664(c) defense to an accuracy-related penalty.   "The most important factor [in the determination of whether the taxpayer acted with reasonable cause and in good faith] is the extent of the taxpayer's efforts to assess his or her proper tax liability." 2010 WL 2105928 at *2 (citing 26 C.F.R. § 1.6664-4(b)(1)).   The court found that the taxpayers

did not make a reasonable effort to comply with the Code or to prepare their tax return because they neither requested a Schedule K-1 nor made an attempt to calculate and report the income, which amounted to approximately 35% of their gross income. *Id.* at *3. As for reliance on the advice of their CPA, the court noted that the taxpayers would have to prove by a preponderance of the evidence that "(1) The advisor was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided all necessary and accurate information to the advisor; and (3) the taxpayer actually relied in good faith on the adviser's judgment." *Id.* at *2. The court found that the taxpayers did not provide necessary and accurate information to their CPA. Indeed, the CPA "credibly testified" that had the taxpayers informed her of the income from Heath First Medical Management, she would have reported it. *Id.* at *3.

In *Crane v. Commissioner,* 102 T.C.M. (CCH) 427, T.C. Memo. 2011-256, 2011 WL 5170497 (2011), the taxpayer (wife) received a $79,329.34 arbitration award for non-economic damages arising out of an employment-related claim. The award should have been reported in the taxpayers' joint return but was not. Husband testified that they had not included the award in the return because wife's attorney from the arbitration informed her that the award was for physical and mental suffering, not wages.[5] However, the court determined that an accuracy-related penalty was properly assessed. The court, as in *Ziegeler,* noted that the most important factor in applying the reasonable cause/good faith defense under § 6664(c) is the extent of the taxpayer's effort to assess his proper liability. At trial the husband admitted that he was skeptical of the attorney's advice, but he went along with it without asking his accountant (who prepared the return) about it or making any other effort to determine whether his concerns were justified.

---

[5] After the events giving rise to the arbitration took place, the wife was diagnosed with cancer.

2011 WL 5170497 at *9.  The court held that a taxpayer must demonstrate that his reliance on the advice of a professional advisor concerning substantive tax law was objectively reasonable, and that it could not be objectively reasonable if the taxpayer did not provide necessary and accurate information to the professional.  *Id.* at *8.

Mr. Blanco relies on *Coblenz v. Commissioner,* 79 T.C.M. (CCH) 1881, T.C. Memo. 2000-131, 2000 WL 366263 (2000).  To be sure, this is a case where the court held that the taxpayer did act with reasonable cause and good faith such that an accuracy-related penalty was not appropriate.  2000 WL 366263 at *8.  The taxpayer did not report the proceeds of a litigation settlement.  But (in contrast to the present case) the taxpayer's tax advisor "testified at trial that he reviewed the pleadings in petitioner's lawsuit, the final settlement agreement, and the applicable tax law and discussed petitioner's lawsuit with [petitioner's attorney in the underlying lawsuit] and petitioner before recommending to petitioners that the settlement proceeds were excludable under section 104(a)(2)." *Id.*  The court concluded, "[a]fter reviewing the entire record, we find petitioners' reliance on their tax advisor [to have been] reasonable and in good-faith, and we conclude that the accuracy-related penalty should not be imposed in this case." *Id.*

I note that the author of the *Coblenz* decision appears to be the same judge who authored the *Ziegeler* decision ten years later.  The principles applicable to a § 6664(c) defense are the same.  Each case turns on its own facts.

In my judgment, Mr. Blanco did not make a meaningful effort to assess his tax liability.  By way of background, his discussions of his case with his CPA well before he received an award show that he was aware of potential tax implications.  This is hardly surprising given his education, training and experience as a financial advisor.  Indeed, Mr. Rohn and the attorney,

Mr. Hilbert, had one telephone conversation about possible structuring of an award in the same time frame – apparently a year or two before an award was made.  Mr. Blanco admitted that after he received the award he thought it would be taxable and expected to be issued a 1099; he acknowledged that he set aside money from the award to pay the taxes in case it was taxable.

But he did not receive a 1099, and he went back to his litigation attorney for advice.  Mr. Hilbert, who does not pretend to be a tax expert, told him something.  I have found it more probable than not that Mr. Hilbert told him that he did not have to pay the tax until he received a 1099, that the award might not be taxable if a 1099 were not issued, and that he should talk to his accountant about the taxability of the award.  Thus, I find it to be unlikely that Mr. Blanco's version of Mr. Hilbert's advice – that because he had not received a 1099, the award was not taxable – is correct.  But if Mr. Hilbert did give him that advice, it would confirm that Mr. Hilbert is not a competent professional with sufficient tax expertise to justify reliance.  Mr. Blanco's present counsel acknowledged during the trial that "nobody who prepares taxes is going to say if you don't receive a 1099, it's not taxable.  Everybody knows that, from the storefront that you go down and have your taxes done at."

It is possible that Mr. Blanco misheard or misunderstood Mr. Hilbert's "advice."  In any event, the purported advice took on a life of its own.  He told his CPA, Mr. Rohn, that Mr. Hilbert had told him that the award was probably not taxable.  Mr. Rohn accepted that.  He told Mr. Rohn that the award probably was for pain and suffering.  Mr. Rohn accepted that.  Mr. Blanco knew that whether a 1099 had been issued to him was important, but he made no meaningful effort to find that out from Morgan Stanley.  As a financial advisor and the former branch manager of Morgan Stanley's Denver office, Mr. Blanco surely is capable of contacting a

14

knowledgeable person at Morgan Stanley and obtaining a 1099.  If he seriously wanted an answer, he would not be put off by someone who answered the phone but "barely spoke any English" (if indeed he did talk to anyone) or by the fact that calls to a recorded 800 number were not returned.

Therefore, if the most important factor in applying the reasonable cause/good faith defense under § 6664(c) is the extent of the taxpayer's effort to assess his proper liability, as the cases and regulation 1.6664-4(b) state, then I could not overturn the accuracy-related penalty on this record.

As for reliance on his professional advisors, the law requires, as a minimum, that the advisor had sufficient expertise to justify reliance, and the taxpayer provided all necessary and accurate information to him.  Mr. Hilbert did not have the expertise.  Mr. Rohn might have had, or have appeared to have had, the expertise, but he was not given necessary or accurate information.  He said so himself in no uncertain terms at trial.

I am not suggesting that Mr. Rohn is without fault in the matter.  I find it surprising that Mr. Rohn would accept and rely on Mr. Blanco's statements about what his attorney told him without getting confirmation from the attorney.  I find it surprising that he wouldn't insist on seeing the written arbitration award and would accept Mr. Blanco's characterization of what the award was for.  I find it surprising that he wouldn't insist that Mr. Blanco either obtain a 1099 or provide verification that no 1099 was issued.  I suspect that Mr. Rohn has learned some good lessons from this experience.  Regardless, Mr. Rohn was not given what he needed to advise Mr. Blanco properly, and Mr. Blanco must share in the blame for that.

In sum, the record of this case is not a foundation on which a § 6444(c) defense can rest. The evidence compels the conclusion that Mr. Blanco did not act with reasonable cause and in good faith within the meaning of the Code.

## ORDER

Accordingly, the Court directs that a final judgment enter in favor of the defendant, United States of America, and against the plaintiffs, Richard E. Blanco and Patricia Duke. This civil action and all claims therein are dismissed with prejudice. As the prevailing party the defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 25th day of January, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

16